1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   RUDY HARRIS,                              CASE NO. 1:03-cv-5690-OWW-DLB P

10              Plaintiff,                    FINDINGS AND RECOMMENDATIONS
                                             RECOMMENDING DEFENDANTS' MOTION
11       v.                                  FOR SUMMARY JUDGMENT BE GRANTED

12   GAIL LEWIS, et al.,                      (Doc. 35)

13              Defendants.                   OBJECTIONS DUE WITHIN THIRTY DAYS
     _____/

14

15   I.      Defendants' Motion for Summary Judgment

16           A.      Procedural History

17           Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action

18   pursuant to 42 U.S.C. § 1983.  This action for damages is proceeding on plaintiff's amended

19   complaint, filed December 2, 2003 on plaintiff's equal protection claim against defendant Alvarado.

20   On September 5, 2007, defendant filed a motion for summary judgment.  Plaintiff filed an opposition

21   on October 1, 2007 and defendant filed a reply on October 11, 2007.  Plaintiff filed a sur-reply on

22   October 24, 2007.

23           B.      Legal Standard

24           Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

25   as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R.

26   Civ. P. 56(c).  Under summary judgment practice, the moving party

27               [A]lways bears the initial responsibility of informing the district court
                 of the basis for its motion, and identifying those portions of "the
28               pleadings, depositions, answers to interrogatories, and admissions on

1

file, together with the affidavits, if any," which it believes
demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"

Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial.

Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

should be granted, "so long as whatever is before the district court demonstrates that the standard

for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence

of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586

n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

(9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

(9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

1  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

2  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

3  amendments).

4        In resolving the summary judgment motion, the Court examines the pleadings, depositions,

5  answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c).

6  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable

7  inferences that may be drawn from the facts placed before the Court must be drawn in favor of the

8  opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655

9  (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing

10  party's obligation to produce a factual predicate from which the inference may be drawn.  Richards

11  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th

12  Cir. 1987).

13        Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show

14  that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole

15  could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

16  trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

17        C.    Undisputed Facts

18  1.    At all times relevant to this action, Plaintiff was in the custody of the California Department

19       of Corrections and Rehabilitation (CDCR) as a prisoner at Pleasant Valley State Prison

20       (PVSP).

21  2.    At all times relevant to this, Defendant Alvarado was employed by the CDCR as a Canteen

22       Manager at PVSP.

23  3.    From March 22, 2001, until March 8, 2002, Plaintiff worked in PVSP's Facility B canteen.

24  4.    When Plaintiff first began working in the canteen, three other inmates worked in the canteen

25       with him.

26  5.    When Plaintiff first began working in the canteen, the ethnicity of the inmates working there

27       consisted of one black, one white, one hispanic and one "other."

28  6.    Sometime after March 22, 2001, the hispanic and "other" inmate canteen workers were

replaced with two whites.

7.   On March 8, 2002, the ethnicity of the inmates working in the canteen consisted of one black (plaintiff) and three whites.

8.   On March 8, 2002, plaintiff and his three inmate canteen co-workers reported for work and were informed by Defendant that their services were no longer required.

9.   Plaintiff and his three co-workers were relieved from duty at the canteen because of suspicion that they were stealing from the canteen and manipulating the canteen draw list so that black inmates received preferential treatment at the canteen.

10.   After Plaintiff and his three white co-workers were relieved from duty at the canteen, PVSP staff conducted an investigation that was unable to substantiate which of the four inmate canteen workers engaged in inappropriate behavior.

11.   Even though the charges could not be substantiated as to any particular inmate canteen worker, the investigation did conclude that inappropriate conduct was occurring in the Facility B canteen.

12.   To ensure the inappropriate conduct did not occur again, all four inmate canteen workers, including Plaintiff, were removed from the canteen.

13.   After Plaintiff and his three white inmate co-workers were removed from the Facility B canteen, four new inmates were hired to work in the canteen.

14.   The ethnicity of the new inmate Facility B canteen workers consisted of one black, one white, one hispanic and one "other."

      D.   Plaintiff's Claims

      In his amended complaint, plaintiff alleges that between March 22, 2001 and March 8, 2002, he was employed in the canteen at PVSP.  Plaintiff contends that on March 8, 2002, Defendant informed him that since there were three white clerks and he was the only black clerk working at the canteen, his job assignment would be terminated due to ethnic balancing needs and therefore his services were no longer required.  Plaintiff alleges that he was discriminated against because of his race and he was treated differently than other similarly situated white inmate workers in violation of his constituional rights.

1   "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated

2   should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985) (citing

3   Plyler v. Doe, 457 U.S. 202, 216 (1982)).  "'To state a claim under 42 U.S.C. § 1983 for a violation

4   of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the

5   defendants acted with an intent or purpose to discriminate against the plaintiff based upon

6   membership in a protected class.'" Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)

7   (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)).  "Intentional discrimination

8   means that a defendant acted at least in part *because of* a plaintiff's protected status." Serrano v.

9   Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting Maynard v. City of San Jose, 37 F.3d 1396,

10  1404 (9th Cir. 1994)) (emphasis in original).  "Where the challenged governmental policy is 'facially

11  neural,' proof of its disproportionate impact on an identifiable group can satisfy the intent

12  requirement only if it tends to show that some invidious or discriminatory purpose underlies the

13  policy." Lee, 250 F.3d at 687 (citing Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429

14  U.S. 252 (264-66) (1977) (internal citations omitted)).  "The mere fact that [a] facially neutral

15  polic[y] had a foreseeably disproportionate impact on an identifiable group does not mean that [it]

16  violated the Equal Protection Clause." Id. at 687.

17  Defendant submits evidence that when Plaintiff first began working at the canteen, there were

18  three other inmate workers - one white inmate, one Hispanic inmate and one "other" inmate.  DUF

19  5.  Sometime after March 22, 2001, the Hispanic inmate and "other" inmate  workers were replaced

20  with two white inmates.  UDF 6.  On March 8, 2002, Defendant informed Plaintiff and the other

21  three inmate workers that their services were no longer required.  DUF. 8.  Defendants contend

22  Plaintiff and his co-workers were relieved from duty because of suspicion they were stealing from

23  the canteen and manipulating the canteen draw list so that black inmates received preferential

24  treatment at the canteen. *See* Exhibit "D," Declaration of N. Villa, ¶ 6.  Defendant denies that

25  Plaintiff was removed from his job assignment for ethnic balancing reasons. *Id*. at ¶ 9.  Defendants

26  submit evidence that the ethnicity of the new inmate workers hired after Plaintiff was removed

27  consisted of one black inmate, one white inmate, one Hispanic inmate and one "other" inmate.

28  The court finds that defendant has met his initial burden of informing the court of the basis

5

1  for his motion, and identifying those portions of the record which he believes demonstrate the

2  absence of a genuine issue of material fact.  The burden therefore shifts to plaintiff to establish that

3  a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith

4  Radio Corp., 475 U.S. 574, 586 (1986).

5       Plaintiff contends that on March 8, 2002, defendant Alvarado informed him that since there

6  were three white inmates and he was the only black inmate, his job assignment would be terminated

7  due to ethnic balancing needs.  Opposition, p. 2:22-25.  Plaintiff denies that they were relieved from

8  duty due to suspicion that they were stealing or manipulating the canteen draw.  Plaintiff contends

9  he was recommended for a pay increase and received a perfect work performance report just eight

10 days before his termination, which he argues shows that he was not under investigation.  Opposition,

11 p. 3: 5-9.

12      Although Plaintiff questions Defendants representation that he was under suspicion for

13 inappropriate conduct, Plaintiff has not submitted any evidence that Defendant treated him any

14 differently because of his race.  Indeed, Plaintiff does not dispute that in addition to himself, three

15 white inmate workers were terminated from their positions in the canteen.  Thus, even if Plaintiff

16 is correct and the inmates were not under suspicion for wrongful conduct, Plaintiff has not submitted

17 evidence that the terminations had a disproportionate impact on African-American prisoners.

18 Further, Plaintiff has not submitted any evidence that defendant Alvarado acted with an "invidious

19 or discriminatory purpose," Lee, 250 F.3d at 686, by choosing that "particular course of action at

20 least in part because of . . . its adverse effect . . ." on African-American prisoners, id. at 687 (internal

21 quotations and citations omitted).  Plaintiff concedes that after he and the other three inmates were

22 removed from their positions, the ethnicity of the new inmate canteen workers consisted of one black

23 inmate, one white inmate, one Hispanic inmate and one "other" inmate.  DUF 14.

24      Plaintiff has failed to establish that a genuine issue as to any material fact actually does exist

25 regarding whether he was discriminated against based on his membership in a protected class.

26 Therefore, defendant Alvarado is entitled to summary judgment on Plaintiff's equal protection claim.

27      E.      Conclusion

28      The court finds that Defendants is entitled to summary judgment on the merits of plaintiff's

6

equal protection claim against him.  Because of this, the court does not reach Defendant's argument that he is entitled to qualified immunity.

For the reasons set forth herein, it is HEREBY RECOMMENDED that Defendant's motion for summary judgment, filed September 5, 2007, be GRANTED in its entirety, thus concluding this matter in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:**   **April 30, 2008**            **/s/ Dennis L. Beck**
                                     UNITED STATES MAGISTRATE JUDGE